# United States Court of Appeals
## For the First Circuit

No. 21-1624

COURTHOUSE NEWS SERVICE; MTM ACQUISITION, INC., d/b/a Portland Press Herald, d/b/a Maine Sunday Telegram, d/b/a Kennebec Journal, d/b/a Morning Sentinel; SJ ACQUISITION, INC., d/b/a Sun Journal,

Plaintiffs, Appellants,

BANGOR PUBLISHING CO., INC., d/b/a Bangor Daily News,

Plaintiff,

v.

AMY QUINLAN,* in her official capacity as State Court Administrator for the State of Maine Judicial Branch; PETER SCHLECK, in his official capacity as Clerk of the Penobscot County Superior Court,

Defendants, Appellees.

No. 21-1642

BANGOR PUBLISHING CO., INC., d/b/a Bangor Daily News,

Plaintiff, Appellant,

COURTHOUSE NEWS SERVICE; MTM ACQUISITION, INC., d/b/a Portland Press Herald, d/b/a Maine Sunday Telegram, d/b/a Kennebec Journal, d/b/a Morning Sentinel; SJ ACQUISITION, INC., d/b/a Sun Journal,

Plaintiffs,

---

* Pursuant to Fed. R. App. P. 43(c)(2), Amy Quinlan has been substituted for James T. Glessner as defendant-appellee in both appeals.

v.

AMY QUINLAN, in her official capacity as State Court
Administrator for the State of Maine Judicial Branch; PETER
SCHLECK, in his official capacity as Clerk of the Penobscot
County Superior Court,

Defendants, Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

---

Before

Barron, Chief Judge,
Lynch and Thompson, Circuit Judges.

---

Barbara A. Smith, with whom Roger Myers, Rachel Matteo-Boehm, Bryan Cave Leighton Paisner LLP, Jeffrey J. Pyle, Prince Lobel Tye LLP, Sigmund D. Schutz, and Preti, Flaherty, Beliveau & Pachios, LLP were on brief, for appellants Courthouse News Service, MTM Acquisition, Inc., and SJ Acquisition, Inc.
Bernard J. Kubetz, with whom Eaton Peabody was on brief, for appellant Bangor Publishing Co., Inc.
Bruce D. Brown, Katie Townsend, and Shannon A. Jankowski on brief for amici curiae Reporters' Committee for Freedom of the Press and twenty-eight media organizations in support of appellants.
Thomas A. Knowlton, Deputy Attorney General, with whom Aaron M. Frey, Attorney General, and Jason Anton, Assistant Attorney General, were on brief, for appellees.
Joshua D. Dunlap, Peter J. Guffin, Laura M. O'Hanlon, and Pierce Atwood LLP on brief for amicus curiae Conference of Chief Justices in support of appellees.

---

April 25, 2022

---

**LYNCH**, **Circuit Judge**.  When the Maine Supreme Judicial Court (SJC) piloted an electronic case filing system for the state's trial courts, its original rules required court clerks to withhold public access to new civil complaints until three business days after at least one defendant had been served, resulting in delayed access, possibly for months.  On February 3, 2021, a group of Maine newspapers and a national legal media company sued a pair of state court officials, alleging that such delayed access violated the First Amendment.  The SJC then changed its rules to eliminate the specific timeframe for providing access.  Instead of delineating a new deadline, it now allows the public to access newly filed civil complaints after court clerks process them.  The rules do not specify how quickly that processing must occur.

The plaintiffs filed first amended complaints alleging that, despite that change, the rules still imposed significant delays on accessing newly filed civil complaints.  They sought a preliminary injunction.  The defendants sought dismissal of the amended complaints, asserting that the plaintiffs had failed to state a plausible First Amendment claim.  In their response to the motion for a preliminary injunction, the defendants disputed the plaintiffs' assertion of undue delays.

The district court held that the plaintiffs had failed to state a claim, dismissed the complaint, and denied the motion for a preliminary injunction as moot.  Courthouse News Serv. v.

-3-

Glessner, 549 F. Supp. 3d 169, 194 (D. Me. 2021). We vacate the dismissal and remand.

**I.**

**A. Factual Background**[1]

Prior to the SJC's adoption of electronic filing rules in August 2020, parties commenced civil cases in Maine state court by filing paper complaints with the appropriate clerk's office.[2] On August 21, 2020, the SJC adopted the Rules of Electronic Court Systems (RECS). The RECS provide for electronic filing of and access to court records. The state is piloting electronic filing in a handful of trial courts. The plaintiffs challenge the RECS on their face and as applied in one of those early adopters, the Penobscot County Superior Court.

Initially, the RECS prohibited public access to electronically filed records "until three business days after acceptance by the court clerk of the filing of such record and proof of service of process on at least one defendant." RECS (4)(A)(1) (effective Aug. 21, 2020). We refer to these initially adopted rules as the Former RECS. As plaintiffs in Maine have

---

[1] We take the facts alleged in the first amended complaint as true and draw all reasonable inferences in favor of the plaintiffs. See Loc. No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc., 838 F.3d 76, 78 n.1 (1st Cir. 2016).

[2] Records for cases assigned after filing to the business and consumer docket were maintained electronically. See Me. R. Civ. P. 139, 140 (repealed 2020).

ninety days to serve defendants, Me. R. Civ. P. 3, the initial version of the RECS potentially delayed public access to newly filed complaints for more than three months.

After the plaintiffs here sued, the SJC amended the Former RECS in February 2021 to eliminate the three-business-days-after-service provision and did not substitute an express deadline. We refer to these amended rules as the Operative RECS. The Operative RECS provide that "[u]nless prohibited by law or by court order, a court record in a civil case is accessible by the public upon entry into the electronic case file."[3] RECS 4(A)(1) (effective Mar. 15, 2021). A record is considered entered into the electronic case file "after a court clerk has determined that the submission complies with" rules governing the submission of documents in Maine courts. RECS 2(A)(1) (citing Me. R. Civ. P. 5(f) and RECS 34). Just as with paper records, the clerk must confirm that the record is signed and accompanied by all "legally required element[s], including but not limited to, a filing fee, appeal fee, registry recording fee and envelope or summary sheet, [and], if filed by an attorney, . . . the attorney's Maine Bar

---

[3] The Former and Operative RECS exclude from disclosure records, including complaints, related to certain sensitive proceedings (e.g., mental health civil commitment proceedings, minor settlement proceedings) and certain private information within court records (e.g., names of minors, personal financial records, personal medical records). See RECS 4(B), (E). Those types of confidential complaints are not at issue.

Registration Number."  Me. R. Civ. P. 5(f).  Additionally, the clerk must confirm that the document has been properly formatted and uploaded.  RECS 34.  Only at that point, under the Operative RECS, is the record available to the public electronically.[4]  RECS 4(A)(1).

Several Maine newspapers -- the Portland Press Herald, Maine Sunday Telegram, Kennebec Journal, Morning Sentinel, Sun Journal, and Bangor Daily News -- and Courthouse News Service, a national legal media company, are the plaintiffs in this action. They seek public access only to newly filed, non-confidential civil complaints filed in the Penobscot County Superior Court, on which they regularly report.  They allege that before that court's implementation of electronic filing, they "could review and report on newly filed civil complaints by reviewing them in paper form and copying them at the courthouse.  Since the adoption of electronic filing [under the Former RECS], however, [their] review of new complaints has been substantially delayed."

The plaintiffs allege that under the Former RECS, they experienced long delays in obtaining newly filed complaints. Courthouse News alleged that it sent a reporter to the Penobscot courthouse "nearly every business day" between February 3 and 25,

_____

[4]    The SJC has also temporarily allowed public access in paper format to any documents entered into the electronic system. SJC Temp. Standing Order (Mar. 1, 2021).

-6-

2021, that the reporter sought access to any new complaints filed since her last visit, and that over those four weeks, the clerk "regularly inform[ed] her that there [were] no additional complaints for her to see, due to the continued applicability of the [Former RECS]." The plaintiffs say that between January 1 and February 24, 2021, twenty civil complaints were filed electronically in Penobscot County Superior Court, but the clerk permitted the Courthouse News reporter "to review only eight of them -- and all of those after a delay of several days to two weeks."

After the SJC amended the Former RECS but before the Operative RECS went into effect, the plaintiffs amended their complaint. They pointed to an automated email from the Penobscot County Superior Court to electronic filers, which stated that the processing period for newly filed civil complaints would take "up to 24 business hours." Based on that email, the plaintiffs alleged that once the Operative RECS took effect, they would experience delays of up to three business days to receive new complaints. They also claim that "a record filed at noon on a Friday could remain unavailable until noon the following Wednesday" and that a holiday weekend would delay access until the following Thursday.

## B. Procedural History

The plaintiffs sued the defendants, the administrator of Maine's judicial branch and the clerk of the Penobscot County

Superior Court, in the U.S. District Court for the District of Maine. They raised both facial and as-applied First Amendment challenges to the Former RECS.[5] After the SJC amended the Former RECS, but before the Operative RECS came into effect, the plaintiffs amended their complaints. The defendants then moved to dismiss the first amended complaints, contending that the plaintiffs' claims were unripe and that the First Amendment permits the sort of "negligible delay" imposed by the Rules. Once the Operative RECS took effect, the plaintiffs moved to preliminarily enjoin them, and the defendants opposed the motion, supporting their opposition with a declaration. The defendants expressly disavowed reliance, at this stage of the case, on any abstention doctrine.

The district court dismissed the first amended complaints for failure to state a claim. Glessner, 549 F. Supp. 3d at 194. It held that the claims were ripe because they were fit for review and because the Operative RECS "create[] a direct and immediate dilemma for the parties and hardship to the Plaintiffs looms." Id. at 179. Turning to the merits, the district court held the First Amendment protects a qualified right

---

5 The initial plaintiffs were Courthouse News and all but one of the newspapers. The district court allowed the final plaintiff, Bangor Publishing Co., to intervene on March 8, 2021. As there are no material differences in the arguments the plaintiffs raise, we discuss them collectively.

of the public to access newly filed civil complaints. Id. at 189. It then determined that the Operative RECS imposed reasonable time, place, and manner restrictions on the plaintiffs' access to judicial records and so rejected the plaintiffs' facial and as-applied challenges. Id. at 191-94. It also denied the motion for preliminary injunction as moot. Id. at 194.

The plaintiffs timely appealed from the judgment, focusing their appellate briefs on their claim that the district court erred in allowing the motion to dismiss.

## II.

We consider the merits of the plaintiffs' claims,[6] reviewing de novo the district court's dismissal of their first amended complaints. Disaster Sols., LLC v. City of Santa Isabel, 21 F.4th 1, 5 (1st Cir. 2021).

Neither this court nor the Supreme Court has recognized any right under the First Amendment to access documents filed in

---

[6] The defendants contend that the plaintiffs' challenge to the Former RECS is moot. But the plaintiffs seek only to enjoin the Operative RECS. And the defendants admit, as they must, that such a challenge is not moot. Cf. ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52-53 (1st Cir. 2013). The defendants also argued to the district court that the plaintiffs' challenge to the Operative RECS was not yet ripe. They do not make that argument again on appeal, and we adopt the district court's holding that the plaintiffs' claims are ripe, see Glessner, 549 F. Supp. 3d at 177-79; cf. Reddy v. Foster, 845 F.3d 493, 500-01 (1st Cir. 2017). As the plaintiffs' claims are neither moot nor unripe, we proceed to the merits.

civil cases.[7]   The parties agree that there is a qualified First

Amendment right in the public to access newly filed complaints.

See Press-Enterprise Co. v. Superior Ct. ("Press-Enterprise II"),

478 U.S. 1, 10-11 (1986).  But see El Dia, Inc. v. Hernandez Colon,

963 F.2d 488, 495 (1st Cir. 1992) (expressing doubt as to extension

of qualified public right of access to civil proceedings).[8]  Where

they differ is on when, and to what, the right attaches.  The

defendants claim the right does not attach until a rules-compliant

complaint is processed, but the plaintiffs claim that the right

attaches at the time a complaint (even if it is ultimately non-

conforming) is filed.  We need not decide that quarrel here because

the defendants concede that some level of First Amendment scrutiny

applies to evaluate whether the time from submission of the

---

[7]    There is a qualified public right to access certain
proceedings and documents in criminal cases.  See Richmond
Newspapers, Inc. v. Virginia, 448 U.S. 555, 576-77 (1980); In re
Boston Herald, Inc., 321 F.3d 174, 183 (1st Cir. 2003).

[8]    We note that each of our sister circuits that has
considered whether the right extends to at least some documents
and proceedings in civil cases concluded that it does.  See, e.g.,
N.Y. Civil Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286,
298 (2d Cir. 2011); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059,
1061 (3d Cir. 1984); Rushford v. New Yorker Mag., Inc., 846 F.2d
249, 253 (4th Cir. 1988); Brown & Williamson Tobacco Corp. v. FTC,
710 F.2d 1165, 1178 (6th Cir. 1983); In re Cont'l Ill. Sec. Litig.,
732 F.2d 1302, 1308 (7th Cir. 1984); In re Iowa Freedom of Info.
Council, 724 F.2d 658, 661 (8th Cir. 1983); Courthouse News Serv.
v. Planet ("Planet I"), 750 F.3d 776, 786 (9th Cir. 2014); see
also Newman v. Graddick, 696 F.2d 796, 801 (11th Cir. 1983)
(extending right to civil habeas proceedings and reserving
decision about whether right applies to other civil proceedings).

complaint to when public access is available is contemporaneous enough. The question raised by the plaintiffs' first amended complaints thus remains whether the time between submission and provision of public access here passes First Amendment scrutiny.

We determine only whether the plaintiffs have plausibly alleged that the Operative RECS violate their right to access such complaints. See Air Sunshine, Inc. v. Carl, 663 F.3d 27, 33 (1st Cir. 2011) (holding that to survive a motion to dismiss "[t]he complaint 'must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face"'" (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))).

The parties offer two different constitutional standards to determine whether the Operative RECS violate the First Amendment as applied to the plaintiffs' requests for access to newly filed civil complaints. The plaintiffs assert that we should apply the standard for "clos[ing]" public access to proceedings in violation of the First Amendment's qualified public right of access: strict scrutiny. Press-Enterprise II, 478 U.S. at 13-14; see Globe Newspaper Co. v. Superior Ct., 464 U.S. 596, 510 n.17 (1982). Under strict scrutiny, the Operative RECS would be unconstitutional unless they are "essential to preserve higher values and [are] narrowly tailored to serve that interest." See id. at 13-14 (quoting Press-Enterprise Corp. v. Superior Court ("Press-Enterprise I"), 464 U.S. 501, 510 (1984)). The defendants

-11-

maintain that, as the district court did, we should evaluate the restrictions under the time, place, and manner framework. Under that standard, if the Operative RECS impose a content-neutral time, place, or manner restriction, they would be unconstitutional unless they are narrowly tailored to serve a significant governmental interest and leave open adequate alternative channels for communication. See Cutting v. City of Portland, 802 F.3d 79, 84 (1st Cir. 2015); Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Under either standard, the state bears the burden of showing that the regulation is constitutionally permissible. See Cutting, 802 F.3d at 84; Press-Enterprise I, 464 U.S. at 510.

We need not determine which standard applies because the plaintiffs have plausibly alleged a First Amendment violation under even the less demanding test. The defendants justify the Operative RECS as serving the state's interest in the "fair and orderly administration of justice," specifically in "ensuring compliance with court rules, minimizing the risk of harm to those involved in court proceedings, and protecting privacy in court records." We accept that states may have a strong interest in enforcing at least some of their rules, in protecting parties, and in safeguarding privacy interests implicated by sensitive judicial records. See In re Providence J. Co., Inc., 293 F.3d 1, 13 (1st Cir. 2002); Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 505-06 (1st Cir. 1989). Yet to survive even intermediate scrutiny, the

defendants must show that whatever administrative delay the Operative RECS create reasonably serves those interests and is narrowly tailored to do so. In the first amended complaint, the plaintiffs allege that they will experience delays in accessing new complaints of up to six calendar days. The defendants must justify those delays by showing that each of the five steps they take to process the complaints -- checking for (1) a signature, (2) appropriate fees, (3) an envelope or summary sheet, (4) a bar number (for attorney filings), (5) proper formatting and uploading -- serve an important governmental interest. We cannot say based on the first amended complaint that the defendants have met that burden. Nor can we say that they have failed to meet it. "[T]his inquiry requires specific findings[.]" In re Providence J., 293 F.3d at 13. But at minimum, taking the allegations in the first amended complaint as true, the plaintiffs have stated a claim for violating the qualified public right of access. Dismissing the first amended complaint was therefore error.

The defendants argue that the plaintiffs failed to allege that the Operative RECS would result in "more than an inconsequential delay" in accessing records. They also assert that the plaintiffs have no basis to make such an allegation. Neither argument bears scrutiny. The plaintiffs expressly allege, based on documents created by the Penobscot County Superior Court, that the court anticipates processing delays of up to "24 business

-13-

hours." The consequences of such a delay remain to be seen. But it is at least plausible that a delay of up to six calendar days would be consequential in the plaintiffs' exercise of their right to access judicial records. The defendants also try to rebut the plaintiffs' assertions about the length of delays by pointing to their own declaration in opposition to the preliminary injunction motion. Those declaration might help the defendants later in the proceedings, but we cannot consider them at the motion-to-dismiss stage, nor can we rely on them to decide a factual dispute in favor of the defendants. See Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8-9 (1st Cir. 2020).

**III.**

We offer three notes to aid the district court on remand.

First, to be clear, reinstating the first amended complaint and allowing the case to proceed permits each side to obtain and present evidence. Given the protean nature of the claims of constitutional violation asserted by the plaintiffs at oral argument, additional specification of the claims may well prove prudent. We decide only that, on the facts alleged, the plaintiffs' claim does not fail as a matter of law.

Second, while the defendants chose not to argue for abstention in seeking dismissal, we note that one of our sister circuits found abstention to be appropriate at a later stage in parallel litigation. See Courthouse News Serv. v. Brown, 908 F.3d

-14-

1063, 1070-75 (7th Cir. 2018).  The defendants' decision not to argue for abstention at the motion-to-dismiss stage does not prevent them from raising abstention concerns later in these proceedings.  See Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 517-18 (1st Cir. 2009).

Third, we caution that the plaintiffs may obtain relief only if they establish that the court officials violate the First Amendment, not merely state law, in delaying their access to complaints.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984); Doe v. Shibinette, 16 F.4th 894, 903-04 (1st Cir. 2021).  If any timelines for providing complaints established under state law are constitutionally sufficient, then state officials' failure to adhere to them is a matter for the state courts.

**IV.**

We reverse the judgment of the district court and remand for further proceedings consistent with this decision.