# United States Court of Appeals

## For the First Circuit

No. 22-1435

JOHN DOES 1-3; JACK DOES 1-1000; JANE DOES 1-6; JOAN DOES 1-
1000,

Plaintiffs, Appellants,

v.

JANET T. MILLS, in her official capacity as Governor of the
State of Maine; JEANNE M. LAMBREW, in her official capacity as
Commissioner of the Maine Department of Health and Human
Services; NIRAV D. SHAH, in his official capacity as Director of
the Maine Center for Disease Control and Prevention;
MAINEHEALTH; GENESIS HEALTHCARE OF MAINE LLC; GENESIS HEALTHCARE
LLC; MAINEGENERAL HEALTH; NORTHERN LIGHT EASTERN MAINE MEDICAL
CENTER,

Defendants, Appellees,

MTM ACQUISTION, INC., d/b/a Portland Press Herald/Maine Sunday
Telegram, Kennebec Journal, and Morning Sentinel; SJ
ACQUISITION, INC., d/b/a Sun Journal,

Intervenors, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Howard, Circuit Judges.

Daniel J. Schmid, Mathew D. Staver, Horatio G. Mihet, Roger

K. Gannam, and Liberty Counsel on brief for appellants.

Kimberly L. Patwardhan, Assistant Attorney General, Thomas A. Knowlton, Deputy Attorney General, Aaron M. Frey, Attorney General, on brief for appellees Janet T. Mills, Jeanne M. Lambrew, and Nirav D. Shah.

James R. Erwin, Katharine I. Rand, and Pierce Atwood LLP on brief for appellees MaineHealth, Genesis Healthcare of Maine LLC, Genesis Healthcare LLC, and MaineGeneral Health.

Ryan P. Dumais, Katherine L. Porter, and Eaton Peabody on brief for appellee Northern Light Eastern Maine Medical Center.

Katie Townsend, The Reporters Committee for Freedom of the Press, Sigmund D. Schutz, Jonathan G. Mermin, and Preti Flaherty Beliveau & Pachios LLP on brief for appellees MTM Acquisition, Inc. and SJ Acquisition, Inc.

---

July 7, 2022

---

**LYNCH**, **Circuit Judge**. Plaintiffs-movants (the "plaintiffs"), who were allowed to proceed under pseudonyms for the first ten months of this case, were ordered by the district court, on motion by intervenor press/media organizations, to file an amended complaint "identifying by name those individual Plaintiffs who elect to proceed as named and identified Plaintiffs in this action." Does 1-6 v. Mills, No. 21-CV-00242, 2022 WL 1747848, at *7 (D. Me. May 31, 2022), modified, No. 21-CV-00242, 2022 WL 2191701 (D. Me. June 17, 2022). The district court did so after briefing and oral argument and found that the plaintiffs had not met their burden of rebutting the presumption against parties proceeding under pseudonyms. See id. at *4-7. It found that the plaintiffs had not shown that their fear of severe harm from disclosure of their identities was objectively reasonable at this time. Id. at *5-7.

The plaintiffs have filed an appeal from the disclosure order. However, this opinion addresses instead the plaintiffs' motion filed in this Court under Fed. R. App. P. 8(a)(2) for an emergency stay of that disclosure order until resolution of their appeal on the merits. We deny the stay.

**I.**

Our prior opinion in this matter describes the plaintiffs' challenge to the Maine vaccine mandate for healthcare workers as it stood on October 19, 2021. See Does 1-6 v. Mills,

16 F.4th 20, 24-28 (1st Cir. 2021), <u>cert. denied sub nom.</u> <u>Does 1-3</u> v. <u>Mills</u>, 142 S. Ct. 1112 (2022). We affirmed the district court's denial of a preliminary injunction seeking to prevent enforcement of that mandate against the plaintiffs. <u>Id.</u> at 24, 37. The defendants in this matter are three Maine officials (the "State Defendants") and five healthcare companies (the "Hospital Defendants").

The plaintiffs have to date litigated their claims under pseudonyms. The complaint, filed August 25, 2021, names them as six "Jane Does" and three "John Does."[1] On August 31, 2021, the plaintiffs moved the district court for permission to proceed as such. As evidentiary support for this motion, the plaintiffs relied on an undated declaration from counsel (the "Schmid Declaration"), filed on August 31, 2021, that relayed the bases for the plaintiffs' desire to proceed anonymously.[2] No plaintiff

---

[1] The complaint also lists two thousand putative plaintiff "Jack Does" and "Joan Does." The plaintiffs have only attempted to support their argument for pseudonymity with reference to the nine "named" plaintiffs, and our analysis follows their lead.

[2] The Schmid Declaration states that "most" of the plaintiffs would decline to pursue their claims if they were not allowed to proceed anonymously. It conveys the plaintiffs' concerns that disclosure would negatively impact their current employment and future job prospects. It also states that the plaintiffs were aware of media coverage containing negative comments about them, including in particular online comments from readers responding to a <u>Bangor Daily News</u> article.

filed a declaration in support of the motion. The district court granted the plaintiffs' motion but left open the possibility of revisiting the question after the preliminary-injunction stage of the litigation. Does 1-6 v. Mills, No. 21-CV-00242, 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021).

On November 10, 2021, two Maine newspaper publishers (the "Media Intervenors") filed a motion to intervene for the purpose of challenging the plaintiffs' continued use of pseudonyms, a motion which the plaintiffs opposed. The district court granted the motion to intervene on December 30, 2021. Does 1-6 v. Mills, No. 21-CV-00242, 2021 WL 6197377, at *3 (D. Me. Dec. 30, 2021). The Media Intervenors then moved on January 27, 2022, to unseal the plaintiffs' identities. In opposing this motion, the plaintiffs relied on the Schmid Declaration, which had been filed at the outset of the case, as evidentiary support for their alleged fears of harm. No individual plaintiff filed a declaration in support of the opposition. Plaintiffs' memorandum of law to the district court also purported to support their position by reference to generalized statements supposedly made by President Biden, New York Governor Kathy Hochul, and television commentators and to online statements made about other COVID-19 vaccine mandates. The memorandum of law also referred to three online comments responding to a press article about the allowance of the

motion to intervene in this case.[3] On May 4, 2022, the district court held a hearing on the unsealing motion.[4]

On May 31, 2022, the district court granted the Media Intervenors' motion and ordered the plaintiffs to identify themselves. Does 1-6, 2022 WL 1747848, at *7. The court found that any privacy interests the plaintiffs were asserting were not "so substantial as to support pseudonymous proceedings," id. at *5, and that there was "a near total absence of proof" that the plaintiffs' fears of harm associated with disclosure of their identities were objectively reasonable, id. at *7; see also id. at *5-6.[5] The district court gave the plaintiffs until June 7, 2022,

_____

[3] The plaintiffs cited three online comments from readers in response to a Portland Press Herald article:

- "The community has every right to ostracize them."
- "For someone to care more about their rights than those who are sick and seeking help . . . the answer is simple: ostracize them from their medical community. And make them and their legal representatives accountable for all the legal fees for being just plain morons."
- "We may as well know their names because if they apply for jobs, I doubt many will be interested in hiring them."

The plaintiffs did not attempt to authenticate these comments or provide more than a cursory description of them.

[4] The Hospital Defendants submitted filings taking no position on the Media Intervenors' motion to intervene and remained silent as to the Media Intervenors' subsequent motion to unseal the plaintiffs' identities. The State Defendants remained silent as to both motions.

[5] The district court did not consider the new assertions made in the plaintiffs' memorandum of law because it was "not verified and largely fail[ed] to identify the speaker, date, or source of each of the statements quoted or paraphrased." Does 1-

- 6 -

to file an amended complaint identifying by name each plaintiff who elected to proceed with the suit. Id. at *7.

The plaintiffs noticed an appeal to this Court on June 1, 2022. On June 7, 2022, they moved the district court for a stay of all proceedings pending appeal or, in the alternative, for a stay of the district court's order to identify themselves. The district court temporarily stayed its disclosure order to allow time for briefing on the stay motion. On June 17, 2022, the district court denied the stay motion but extended the plaintiffs' time to amend their complaint until July 8, 2022. Does 1-6, 2022 WL 2191701, at *2.

This motion for a stay of the district court's disclosure order pending appeal followed.[6] We have received briefs from all of the parties on the stay motion. The Media Intervenors and the Hospital Defendants oppose a stay of the disclosure order. The State Defendants take no position on whether the disclosure order should be stayed.

---

6, 2022 WL 1747848, at *5 n.5. The plaintiffs do not challenge that decision on appeal. They reiterate some of the same assertions in their instant motion to stay, but we do not consider these assertions for the reasons cited by the district court.

[6] The plaintiffs do not seek a stay of the district court proceedings generally.

II.

Our consideration of the plaintiffs' motion seeking a stay pending appeal is de novo. See Fed. R. App. P. 8(a)(2). As we consider the plaintiffs' likelihood of success, it is relevant that the appeal on the merits from the district court's disclosure order, which is sought to be stayed pending appeal, would be subject to an abuse of discretion standard of review. See Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 70 (1st Cir. 2011); Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 190 (2d Cir. 2008); see also Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo, 18 F.4th 38, 42-43 (1st Cir. 2021) (considering standard of review applicable on eventual appeal).

> In determining whether to grant a stay, courts consider:
>
> (1) [W]hether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos., 996 F.3d 37, 44 (1st Cir. 2021) (alterations in original) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)).[7] "The first two factors

---

[7] Though there is functional overlap between the stay analysis and the test for assessing issuance of a preliminary injunction, they are distinct inquiries. See Nken, 556 U.S. at

- 8 -

'are the most critical.'" Id. (quoting Nken, 556 U.S. at 434). "It is not enough that the chance of success on the merits be better than negligible. . . . By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor." Id. (alteration in original) (quoting Nken, 556 U.S. at 434-35). A stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." Nken, 556 U.S. at 427 (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926)).

**A.**

The plaintiffs' likelihood of success on the merits of their appeal must be considered in light of the strong presumption against pseudonymity. Those circuit courts that have considered the matter have recognized a strong presumption against the use of pseudonyms in civil litigation. See, e.g., United States v. Pilcher, 950 F.3d 39, 45 (2d Cir. 2020); Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011); S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe, 599 F.2d 707, 712-13 (5th Cir. 1979); Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 872 (7th Cir. 1997); Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067-68 (9th Cir. 2000); Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000); United States v. Microsoft Corp., 56

---

428-29, 434-35; 16A Wright & Miller, Federal Practice & Procedure § 3954 (5th ed., Apr. 2022 update).

F.3d 1448, 1463-64 (D.C. Cir. 1995) (per curiam).  We join these courts in recognizing the strong presumption against the use of pseudonyms in civil litigation.

The Federal Rules of Civil Procedure do not provide for the use of pseudonyms.  To the contrary, the Rules require that "[t]he title of the complaint must name all the parties," Fed. R. Civ. P. 10(a), and that "[a]n action must be prosecuted in the name of the real party in interest," id. R. 17(a)(1).  Permitting parties to proceed anonymously is also in tension with the common law presumption of public access to judicial proceedings and records.  See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 565-74 (1980) (plurality opinion of Burger, C.J.); Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-99 (1978).  This public access is important because it "allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system."  McKee, 649 F.3d at 70 (internal quotation marks omitted) (quoting F.T.C. v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987)).  And "[i]dentifying the parties to [a] proceeding is an important dimension of [this] publicness."  Blue Cross & Blue Shield United of Wis., 112 F.3d at 872.  In short, "[t]he people have a right to know who is using their courts."  Id.

We acknowledge that some circuits have found that the use of pseudonyms may be warranted in "exceptional cases."

- 10 -

Megless, 654 F.3d at 408 (citation omitted). In assessing whether this high bar is cleared, courts balance the interest established by the party wishing anonymity against the interests of both the public and other parties. See Sealed Plaintiff, 537 F.3d at 189 (summarizing different circuits' approaches).

This Court has not formulated a test for assessing when parties may proceed under pseudonyms, and we decline to do so in the context of the present emergency motion. The district court applied the Third Circuit's multi-factor test from Megless, 654 F.3d at 408, which other district courts in this circuit have relied on and which the parties agreed provides a "workable framework" for the analysis, Does 1-6, 2022 WL 1747848, at *2 n.2. For purposes of evaluating the instant motion, we will do the same.

For a party who wishes to proceed under a pseudonym to prevail under Megless, the party must first show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." 654 F.3d at 408 (quoting Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est., 596 F.3d 1036, 1043 (9th Cir. 2010)). The ultimate purpose of the Megless inquiry is to evaluate if there is a "reasonable fear of severe harm that outweighs the public's interest in open litigation." Id. at 409.

We conclude that the plaintiffs have made no such showing. Much has changed since the plaintiffs filed suit ten months ago. The plaintiffs' identities were disclosed to the

- 11 -

defendants, and no plaintiffs withdrew from the case to avoid this disclosure.  See Does 1-6, 2022 WL 1747848, at *6.  The plaintiffs conceded to the Supreme Court in relation to their petition for a writ of certiorari that seven of them had been terminated based on their refusal to be vaccinated.  The Hospital Defendants have represented that as of November 10, 2021, the other two plaintiffs are no longer covered by Maine's vaccination mandate as modified on that date.  As to each of the nine plaintiffs, then, the circumstances have changed considerably based on what we know from this record.

The plaintiffs have made a choice not to offer either individualized declarations from each plaintiff or even a declaration from counsel in light of these changed circumstances. They have provided no current evidence that there are plaintiffs who are deterred from proceeding with the lawsuit by a requirement of disclosing their identities.  There is no evidence of any harm resulting from disclosure at this point in the litigation.  Cf. Does I thru XXIII, 214 F.3d at 1069 ("[T]he balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses.").  The plaintiffs have provided no current evidence of any potential harm to themselves or evidence on subsidiary issues such as whether they are employed and whether they have kept their identities confidential throughout the course of the

- 12 -

litigation.  Cf. Megless, 654 F.3d at 409 (identifying confidentiality as a relevant factor).  Instead, ten months into the litigation, they continue to rely on the generalized assertions in the August 2021 Schmid Declaration as the primary evidentiary support for their continued pseudonymity.  The Schmid Declaration does not establish any non-speculative present harm from disclosure.

The plaintiffs do not cite Supreme Court or circuit law bearing directly on their situation, and multiple of the district court decisions they cite concern the early stages of challenges to vaccine mandates.  For example, in Does 1-2 v. Hochul, No. 21-CV-5067, 2022 WL 836990 (E.D.N.Y. Mar. 18, 2022), cited by plaintiffs as addressing the "precise issue" here, the court made the "close call" to grant plaintiffs leave to proceed anonymously but reserved the right to revisit the question following the motion-to-dismiss stage, id. at *2-4. And religious freedom cases, including those involving challenges to vaccine mandates, are often brought in the names of the plaintiffs.  See, e.g., Brox v. The Woods Hole, Martha's Vineyard, & Nantucket Steamship Auth., No. 22-CV-10242, 2022 WL 715566, at *2 (D. Mass. Mar. 10, 2022); Together Emps. v. Mass Gen. Brigham Inc., No. 21-CV-11686, 2021 WL 5234394, at *1, *3-4 (D. Mass. Nov. 10, 2021), aff'd, 32 F.4th 82, 87 (1st Cir. 2022); Rodriguez-Vélez v. Pierluisi-Urrutia, No. 21-

- 13 -

CV-1366, 2021 WL 5072017, at *1 (D.P.R. Nov. 1, 2021); <u>Harris</u> v. <u>Univ. of Mass., Lowell</u>, 557 F. Supp. 3d 304, 306 (D. Mass. 2021).

Given the absence of record evidence substantiating the plaintiffs' assertions of anticipated harm, they have not met their burden of showing likelihood of success on the merits of their appeal.

**B.**

Because the plaintiffs' likelihood of success on the merits turns on their showing a reasonable fear of harm, it follows from the preceding analysis that the plaintiffs have not established a threat of irreparable harm.  Denial of the stay itself does not constitute irreparable harm under these circumstances.

And the public interest and the Media Intervenors' interests weigh in favor of denying the stay due to the presumption of public access.  <u>See, e.g.</u>, <u>McKee</u>, 649 F.3d at 70.

**III.**

The motion is <u>denied</u>.

- 14 -