# United States Court of Appeals
## For the First Circuit

No. 22-1525

JOHN DOE,

Plaintiff, Appellee,

v.

TOWN OF LISBON; NEW HAMPSHIRE DEPARTMENT OF JUSTICE,

Defendants,

EUGENE VOLOKH,

Intervenor, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Kayatta, Gelpí, and Montecalvo,
Circuit Judges.

Eugene Volokh and Ireland Rose Larsen, Law Student Advocate, with whom First Amendment Clinic, UCLA School of Law were on brief, for appellant.
Christopher T. Meier, with whom John M. Crabbs and Cooper Cargill Chant, P.A. were on brief, for appellee.
Katie Townsend, Bruce D. Brown, Shannon A. Jankowski, Sasha Dudding, and Reporters Committee for Freedom of the Press, on brief for Reporters Committee for Freedom of the Press and 15 Media Organizations, amici curiae.

August 16, 2023

**KAYATTA**, **Circuit Judge**.     Intervenor Eugene Volokh challenges the district court's decision to allow a former New Hampshire police officer to proceed pseudonymously in challenging the inclusion of his name on New Hampshire's "Exculpatory Evidence Schedule" (EES).    We assume appellate jurisdiction over this interlocutory appeal to resolve Volokh's challenge on the merits. Because Doe's reasons for proceeding pseudonymously place his case within the category of "exceptional cases in which party anonymity ordinarily will be warranted," Doe v. MIT, 46 F.4th 61, 71 (1st Cir. 2022), we affirm the district court's exercise of its discretion in denying Volokh's motion.

**I.**

**A.**

The EES is a list maintained by New Hampshire's Department of Justice identifying law enforcement officers "who have engaged in misconduct reflecting negatively on their credibility or trustworthiness."    N.H. Ctr. for Pub. Int. Journalism v. N.H. Dep't of Just., 247 A.3d 383, 387 (N.H. 2020). Law enforcement officials initially began the list without any statutory mandate as a means of sharing information about officer misconduct with prosecutors to better facilitate their compliance with Brady disclosure requirements in the wake of a decision by New Hampshire's Supreme Court.    Id. at 388-89 (describing the effect of State v. Laurie, 653 A.2d 549 (N.H. 1995)).

- 3 -

Subsequently, litigation arose concerning the extent to which, if any, the EES was a public record subject to disclosure under New Hampshire's Right-to-Know Law. Id. at 386-87. New Hampshire's Supreme Court classified the EES as a public record that did not fall into the disclosure exemption carved out for police personnel files. Id. at 391-92. However, that holding did not require the public disclosure of the names of officers with pending challenges to their listing. Id. at 387.

A year later, New Hampshire enacted a statute that more or less codified the status quo in the wake of the decisions by New Hampshire's highest court. See N.H. Rev. Stat. Ann. § 105:13-d (2021). In this manner, New Hampshire sought to provide the public with important information concerning police misconduct while also affording officers notice and an opportunity to show that they should not be included on the list before their inclusion is made public.

As relevant here, for officers like Doe whose names were on the EES in 2021, the statute requires the New Hampshire Department of Justice to notify the officer that the officer's name is on the list and gives the officer 180 days to "file a lawsuit in superior court regarding the officer's placement on the [EES]." Id. § 105:13-d(II)(a). Should the officer timely commence such a lawsuit, the officer's name will remain nonpublic during the pendency of the legal challenge and thereafter if the court

- 4 -

finds in favor of the officer (with exceptions not relevant here). Id. § 105:13-d(II)(d).

## B.

Formerly employed by the Town of Lisbon ("Town") police department, Doe complains that the Town caused the New Hampshire Department of Justice to add his name to the EES. When Doe received notice of his placement on the list, he timely commenced this lawsuit in New Hampshire state court challenging his listing and alleging that the Town's actions in causing him to be placed on the list violated his rights under state and federal law, including his rights to due process. The defendants timely removed the suit to federal court. Under both state and federal law, Doe seeks damages and an injunction removing his name from the list. Both parties presume that the adjudication of Doe's claims under New Hampshire law constitutes the type of proceeding envisioned by the New Hampshire statute for challenging a listing on the EES.

Because disclosure of his name will allegedly cause much of the very harm he seeks to avoid, Doe has sued under the "John Doe" pseudonym rather than his own name. Apparently by oversight, a single page of the original complaint contains a word processing pathway that includes Doe's actual name. Prior to removal, Doe secured an order from the New Hampshire Superior Court sealing the state court docket and all pleadings. After removal, the parties filed a joint "motion for redaction" asking that the district court

redact the reference path and file name contained on the complaint that revealed Doe's full name to protect Doe's pseudonymity. The district court granted the motion subject to the condition that a redacted copy of the complaint be placed in the public docket. As a result, the unredacted state court complaint is sealed, and there appears on the federal docket a redacted complaint that is identical to the original complaint in all respects except for redaction of the word processing pathway containing Doe's name. Nothing else in the federal docket is redacted or sealed.

Following removal, the parties agreed to split the action, retaining in federal court all of Doe's claims for damages under federal and state law, while remanding to state court his requests that the court: (1) declare that he should not be listed on the EES; and (2) issue an injunction (or writ of mandamus) ordering the removal of his name.[1]

During the pendency of these (now several) lawsuits, the New Hampshire Department of Justice has not released to the public the listing of Doe's name on the EES. All parties to this appeal presume -- and therefore so shall we -- that if Doe prevails in

---

[1] Counts I and II allege that Doe's inclusion on the EES violated his procedural and substantive due process rights under the United States Constitution and the New Hampshire Constitution. Counts V and VI, both asserted only against the Town, allege libel, slander, and damage to Doe's reputation and seek attorney's fees. Counts III and IV, remanded in full, seek declaratory relief and mandamus removing Doe's name from the list. No party challenges the appropriateness of this severance and remand.

the remanded state proceeding his name will be deleted from the EES absent further proceedings not relevant here. Conversely, it also appears that all parties agree that, should Doe lose the state action, his listing will become public.

Both parties to this lawsuit are content to have Doe proceed as Doe, but Volokh, a UCLA law professor, is not. He has intervened in the federal action to challenge Doe's pseudonymity and to request that the single sealed document in the record, the state court complaint that includes Doe's name in the reference path and filename at the bottom of one page, be unsealed. Volokh contends that he cannot effectively write about the case in his academic work and on his blog because of Doe's anonymity.

In an order "limited to pretrial proceedings," the district court granted Volokh's motion to intervene but denied his motion to unseal and challenge pseudonymity. Volokh now asks us to reverse that denial.

**II.**

At the outset, Doe challenges this court's appellate jurisdiction over Volokh's interlocutory appeal under the collateral order doctrine. This doctrine permits appellate courts "to hear appeals from judgments that are not complete and final if they 'fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of

the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Godin v. Schencks, 629 F.3d 79, 83-84 (1st Cir. 2010) (quoting Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 123 n.13 (1st Cir. 2003)). We have not yet addressed whether orders granting motions to proceed by pseudonym fall within the collateral order doctrine, although we have held that "orders denying motions to proceed by pseudonym are immediately appealable under the collateral order doctrine." MIT, 46 F.4th at 66 (emphasis added). We decline to resolve this question now. Instead, we assume that we have appellate jurisdiction over Volokh's appeal "[r]ather than resolving the issues relating to [the] application of the collateral order doctrine." Sherrod v. Breitbart, 720 F.3d 932, 936 (D.C. Cir. 2013). "Although hypothetical jurisdiction is generally disfavored, such a barrier is insurmountable only when Article III jurisdiction is in issue." Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 91-92 (1st Cir. 2020) (citations omitted). This case poses a question of statutory, not Article III, jurisdiction.[2]

---

[2] The collateral order doctrine provides an exception to 28 U.S.C. § 1291's statutory grant of jurisdiction over final decisions of United States district courts to the courts of appeal. Because the potential jurisdictional constraint here is imposed by statute and not by the Constitution, we may assume hypothetical jurisdiction here. See Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021) ("[A]s this Court has done before when statutory jurisdiction is ambiguous but the merits are straightforward, we bypass the jurisdictional issue and explain why the merits hold no water."); Donahue v. Fed. Nat'l Mortg.

Thus, the question of jurisdiction "need not be resolved if a decision on the merits will favor the party challenging the court's jurisdiction." Id. at 92. For reasons we will explain, a decision on the merits favors Doe. We therefore exercise our discretion to assume appellate jurisdiction to resolve Volokh's appeal on the merits.

## III.

### A.

Federal courts maintain a "strong presumption against the use of pseudonyms in civil litigation." Does 1-3 v. Mills, 39 F.4th 20, 25 (1st Cir. 2022). Nevertheless, a district court "enjoys broad discretion to quantify the need for anonymity in the case before it." MIT, 46 F.4th at 72. "This broad discretion extends to the court's ultimate determination as to whether that need outweighs the public's transparency interest." Id. Our court then reviews "a district court's denial of a motion to proceed by pseudonym for abuse of discretion," id. at 66, and the parties agree that it follows that the same standard of review also applies to a district court's denial of a motion challenging pseudonymous proceedings. Under this deferential standard, we reverse the district court "only if it plainly appears that the court below

Ass'n, 980 F.3d 204, 207 (1st Cir. 2020) ("[W]e conclude that the prudent course here is, as we sometimes do, to assume appellate jurisdiction and proceed to the merits, given how clear they are.").

- 9 -

committed a meaningful error of judgment." Fontanillas-Lopez v. Morell Bauzá Cartagena & Dapena, LLC, 832 F.3d 50, 63 (1st Cir. 2016) (quoting West v. Bell Helicopter Textron, Inc., 803 F.3d 56, 66 (1st Cir. 2015)).

Volokh, though, argues that because he seeks the unsealing of the original complaint, we should view this appeal as asserting a violation of the First Amendment presumptive right of the public to access official court records. See Doe v. Pub. Citizen, 749 F.3d 246, 269 (4th Cir. 2014). According to Volokh, his appeal of the district court's pseudonymity decision should be treated in the same manner as a sealing decision because, here, pseudonymity has been protected in part by the sealing of a document -- the original complaint that erroneously contained Doe's real name at the bottom of a single page. He contends further that, so viewed, the appeal calls for de novo review, and "strict scrutiny." See id. at 267, 270 (holding that plaintiffs plausibly alleged that the district court's extensive redaction of its memorandum opinion and "wholesale sealing of the parties' summary judgment motions and accompanying materials" violated the public's First Amendment right of access, requiring that the party seeking to seal the documents present a "compelling interest sufficient to overcome the strong First Amendment presumptive right of public access").

We reject Volokh's attempt to frame this case as a sealing/unsealing case. The only item sealed is a complaint identical to the complaint on the public docket save for a formatting snafu that reveals Doe's name. Thus, the public has not been deprived of its ability to access information any more than in any case in which a party proceeds pseudonymously. This distinguishes Volokh's request from Courthouse News Service v. Quinlan, 32 F.4th 15 (1st Cir. 2022), in which we held that the sealing of newly filed complaints, in their entirety, for up to six calendar days could at least plausibly impede the public's presumptive First Amendment "right to access judicial records." Id. at 21. Indeed, had Doe's name not erroneously appeared on the reference path and file name at the bottom of a single page of the complaint, the document would not have been sealed -- yet Volokh's pseudonymity challenge would have, presumably, proceeded. In short, the public has full access to all information contained in the docket other than one party's name. We therefore see no reason to analyze this appeal as raising a challenge distinct from the pseudonymity challenge addressed in Doe v. MIT.

**B.**

Issued after the district court's decision here, Doe v. MIT eschewed the multi-factor tests employed in other circuits to determine whether pseudonymous litigation is warranted. 46 F.4th at 69-70. Instead, we sketched "four general categories of

- 11 -

exceptional cases in which party anonymity ordinarily will be warranted." Id. at 71. These categories are: (1) cases in which disclosure of the would-be Doe's identity would "cause him unusually severe harm"; (2) "cases in which identifying the would-be Doe would harm 'innocent non-parties'"; (3) "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated"; and (4) "suits that are bound up with a prior proceeding made confidential by law." Id. at 71 (quoting Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 190 (2d Cir. 2008)). Ultimately, these categories are designed to provide guidance to district courts in "balanc[ing] the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account." Id. at 72. To follow that guidance, the district court determines whether the case before it fits into one of the four categories. If so, "party anonymity ordinarily will be warranted." Id. at 71. Moreover, "it [also] is possible that a party whose case for pseudonymity appears weak when each [category] is analyzed separately may nonetheless make a persuasive showing when multiple [categories] are implicated," and anonymity will be warranted. Id. at 72. Otherwise, the presumption against pseudonymous litigation will prevail, at least absent the "rare" and "exceptional" case not foreseen in Doe v. MIT.

This litigation fits into the fourth category.[3] The actions of the New Hampshire Department of Justice in preliminarily listing Doe are fairly viewed as a "prior proceeding," and litigation of the now-remanded state claims may be considered such a proceeding but for the immaterial distinction that it is contemporaneous rather than "prior." As explained in Doe v. MIT, this category is implicated "when denying anonymity in the new suit would significantly undermine the interests served by that confidentiality [provided by law in the prior proceeding]." Id. at 72.

Volokh, though, contends that we should grant no weight to New Hampshire's treatment of Doe's EES listing as confidential, or to the fact that its courts allow him to proceed anonymously. After all, we are in federal court, where the Federal Rules of Procedure control. But Doe v. MIT makes clear that the federal rules and practice allow for pseudonymous litigation in appropriate cases. So we are simply asking whether, under that federal precedent, the circumstances of this case allow a district court the discretion to grant pseudonymity.

---

[3] Volokh would have us narrowly reframe Doe v. MIT's fourth category as a holding that "the confidentiality of a Title IX disciplinary proceeding may sometimes -- but not always -- furnish grounds for finding an exceptional case warranting pseudonymity." This framing overlooks the fact that a Title IX disciplinary proceeding is but one specific example of a proceeding that fits within the more broadly defined category of "prior proceeding[s] made confidential by law." MIT, 46 F.4th at 71.

Nor does the fact that the "prior" proceedings at issue are state court proceedings preclude treating this case as within the fourth category identified in Doe v. MIT. In that case itself, the court cited to state court juvenile proceedings as an apt example of "a prior proceeding made confidential by law." Id. at 72. We keep in mind, too, that fitting into the fourth category provides no automatic occasion for pseudonymous litigation. Id. at 71 ("party anonymity ordinarily will be warranted") (emphasis supplied).

We certainly consider, too, "the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." Id. at 76. This background information, here gleaned from New Hampshire's statute, tells us that New Hampshire has a strong public interest in pseudonymity through the EES challenge process that "should weigh heavily in" the federal district court's decision as to whether a litigant may proceed pseudonymously. Id. (quoting MetLife, Inc. v. Fin. Stability Oversight Council, 865 F.3d 661, 675 (D.C. Cir. 2017)). The interests served by New Hampshire's decision to provide Doe with a court hearing before publicizing his listing on the EES are obvious. The opportunity for prepublication challenges mitigates due process concerns and increases the likelihood that the list is reliable. The list is valuable to the state and to the public only if it is accurate, and ensuring that listings are thoroughly

- 14 -

vetted before being publicized directly furthers that end. Officers, too, have a strong interest in being able to challenge listings before they are made public. The listing is a form of official public branding by the state. The effects of such an official public branding on one wishing to work as a police officer are likely to be immediate and concrete. See, e.g., Duchesne v. Hillsborough Cnty Att'y, 119 A.3d 188, 196 (N.H. 2015) ("[I]nclusion on the [EES] carries a stigma [and] police officers have a weighty countervailing interest in [e]nsuring that their names are not placed on the list when there are no proper grounds for doing so."); Gantert v. City of Rochester, 135 A.3d 112, 118 (N.H. 2016) (explaining that officers have a liberty interest under the New Hampshire constitution in their professional reputations implicated by inclusion on the EES). The district court thus concluded, and we agree, that Doe's fears of disclosure went beyond a concern that he would suffer embarrassment if his identity was released and that his concerns that he would "experience severe reputational damage and impairment of future career prospects" were "well founded."

Volokh's best argument against Doe's continued pseudonymity points to the fact that Doe has done more than seek to avoid being listed on New Hampshire's EES. Doe also seeks an award of damages under both state and federal law, alleging that public officials have acted unconstitutionally in listing him.

So, for that reason, Volokh says we should preclude Doe from proceeding pseudonymously in pursuit of his damages claims even if we would not have so ruled in a narrower case.

While we acknowledge the distinction, we think it falls short of requiring that we find an abuse of discretion by the district court on the facts of this case. The damages claims, as reflected so far in the record, arise out of the same occurrence that gave rise to the requests for declaratory and injunctive relief. They would therefore have likely been subject to claim preclusion had they not been pled initially in the same complaint.[4] So were we to accept Volokh's distinction as controlling, we would be saying to any officer improperly listed on the EES that the price of retaining the anonymity promised by the statute is the

---

[4] See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); Merriam Farm, Inc. v. Town of Surry, 125 A.3d 362, 364 (N.H. 2015) ("[Claim preclusion] prevents parties from relitigating matters . . . that could have been litigated in the first action, and it applies if three elements are met: '(1) the parties are the same or in privity with one another; (2) the same cause of action was before the court in both instances; and (3) the first action ended with a final judgment on the merits.'" (quoting In re Est. of Bergquist, 100 A.3d 510, 512 (N.H. 2014))); see also id. (explaining that "[t]he term 'cause of action' is defined as the right to recover, regardless of the theory of recovery" and that to determine "whether two actions are the same cause of action for the purpose of applying res judicata, [a court considers] whether the alleged causes of action arise out of the same transaction or occurrence." (first quoting Meier v. Town of Littleton, 910 A.2d 1243, 1246 (N.H. 2006); then quoting Sleeper v. Hoban Fam. P'ship, 955 A.2d 879, 883 (N.H. 2008)))).

release of any claim for compensation of any damages arising out of that improper listing.

Volokh also asserts that First Amendment and common law principles create a presumptive right of the public to know Doe's name now that he has filed suit. We agree. See MIT, 46 F.4th at 67-68. The district court, however, recognized and applied that presumption. And although the district court did not have the benefit of our later-issued opinion in Doe v. MIT, its analysis -- training its attention on the state disclosure procedure, and recognizing that this case is unique because of its relationship to that procedure -- aligns well with the guidelines provided in Doe v. MIT.

## IV.

For the foregoing reasons, we affirm the denial of Volokh's motion to unseal and oppose pseudonymity.